**AMERICAN ARBITRATION ASSOCIATION**

AMERICAN ARBITRATION ASSOCIATION RECEIVED MAR 2 6 2007 CCMC

| | |
|---|---|
| HALLMARK CARDS, INCORPORATED, ) | |
| ) | |
| Claimant, ) | |
| v. ) | Matter No. 57 181 00014 06 |
| ) | |
| MONITOR COMPANY GROUP ) | |
| LIMITED PARTNERSHIP, ) | |
| ) | |
| Respondent. ) | |

### INJUNCTION

Respondent Monitor Company Group Limited Partnership ("Monitor") is hereby enjoined and ordered as follows:

1. Monitor shall make a search of all its electronic systems, including its servers, freestanding computers, mainframes, databases, laptops, desktops, and all other work stations as well as any places where archived electronic information is stored (hereinafter "Monitor Systems") for any remaining Hallmark Data, *provided that* Monitor need not search any Monitor Systems components that are solely dedicated to Monitor fees or expenses tracking, billing, or collections and *further provided that* Monitor Systems shall be limited to such systems of Monitor Company Group Limited Partnership and the subsidiaries listed on Exhibit A hereto (hereinafter "Monitor Entities") and shall not include systems dedicated to subsidiaries not listed on Exhibit A or to affiliates. As used herein, "Hallmark Data" means any document (or portion thereof) or other information that refers or relates in any way to (a) Hallmark, the greeting card industry, or the gifts industry that was provided by Hallmark to Monitor, or was created or acquired by Monitor as part of Monitor's Hallmark work, or (b) Monitor's work for Hallmark, *provided, however,* that internal Monitor documents which have not been provided or disseminated to any person or entity outside of Monitor or the "Monitor Entities" and which

EXHIBIT D

merely mention Hallmark and contain no other information on Hallmark or the greeting card or gifts industries shall not be considered Hallmark Data. To accomplish this search, Monitor shall engage an independent computer forensic search firm acceptable to Hallmark (the "eFirm"). The eFirm shall then conduct a search of Monitor Systems using search methods and terms mutually agreed upon by Monitor and Hallmark. The results of the search shall be reviewed by Monitor's counsel in the first instance to determine whether the documents are responsive. If Monitor's counsel considers any document located in the search not to contain Hallmark Data, counsel shall list the document in a log (the "Log", to be similar to a privilege log) reasonably identifying the document, its location, and the general nature of its content. Monitor shall provide the Log to Hallmark. If Hallmark disputes any entry on the Log, the document(s) in question shall be produced to Hallmark's counsel under the "Strictly Confidential" provisions of the Stipulated Protective Order. If the parties are unable to resolve their dispute as to any document(s) listed on the Log, the Arbitrator will review the document(s) and make the final decision as to deletion from Monitor Systems after giving the parties an opportunity to be heard orally or in writing, as he deems appropriate. Monitor shall permanently delete from Monitor Systems all responsive documents in accordance with Paragraph 3 hereof.

2.  a.  Monitor shall also conduct a physical search of the offices and other storage locations used by any Monitor employee whose office has not previously been searched in the course of this proceeding and who is known to have authored or received (a) electronic or hard copy documents containing Hallmark Data; or (b) training in which such documents were used to look for any hard copy documents containing Hallmark Data. Monitor shall interview each current employee whose office is searched to determine whether the employee has used or disseminated documents containing Hallmark Data and, if so, the nature of such use and the

identity of any person to whom or entity to which Hallmark Data was disseminated. Monitor shall then cause a physical search to be conducted of the office and storage locations of any Monitor recipient in accordance with the interview and follow-up procedure described herein. This process shall continue until all Monitor employees known to have authored, received, or disseminated such documents have been interviewed and their offices and storage locations searched. If a Monitor employee is determined to have transmitted Hallmark Data to a person or entity outside of Monitor, Monitor shall take reasonable steps to retrieve the documents in question.

    b. Monitor shall revise its training materials so that such materials no longer contain any Hallmark Data.

    c. Monitor shall destroy in accordance with Paragraph 3 hereof all hard copy materials located pursuant to the procedures specified in this Paragraph 2.

    3. Monitor shall produce to Hallmark all electronic and hard copy documents containing Hallmark Data which (a) have been disseminated to or accessed by any person or entity other than Monitor Entities or (b) contain Hallmark Data different than Hallmark Data previously produced in this proceeding. If a document containing Hallmark Data has been disseminated to or accessed by any person or entity other than Monitor Entities, Monitor shall also produce whatever documents evidence such access and/or dissemination (unless previously produced in this proceeding) and shall take reasonable steps to retrieve the document containing Hallmark Data. In the event that no document evidencing such access or dissemination exists, Monitor shall disclose to Hallmark the identity of each such non-Monitor Entity person or entity accessing or receiving any such Hallmark Data and shall identify the Hallmark Data that person or entity accessed or received. If neither (a) nor (b) of this Paragraph 3 applies to a document

3

containing Hallmark Data, Monitor shall cause that document to be permanently deleted from Monitor Systems in the presence of an appropriate eFirm representative. All hard copies of such documents shall also be destroyed. An officer of, or another person authorized to sign on behalf of, the eFirm shall provide both parties with a sworn statement, executed under penalty of perjury and based upon personal knowledge, attesting to the permanent deletion of such electronic documents containing Hallmark Data. An officer of, or another person authorized to sign on behalf of, Monitor shall provide to Hallmark a sworn statement, executed under penalty of perjury and based upon personal knowledge, attesting to the destruction of the hard copy documents containing Hallmark Data. After Monitor has provided Hallmark with all documents containing Hallmark Data that fall within either (a) or (b) of this Paragraph 3, Monitor shall cause those documents as well to be permanently deleted from Monitor's Systems and all hard copies destroyed. An officer or person authorized to sign on behalf of the eFirm shall provide both parties with a sworn statement, executed under penalty of perjury and based upon personal knowledge, attesting to the permanent deletion of all remaining electronic documents containing Hallmark Data. An officer of, or another person authorized to sign on behalf of, Monitor shall provide to Hallmark a sworn statement, executed under penalty of perjury and based upon personal knowledge, attesting to the destruction of all remaining hard copy documents containing Hallmark Data.

4.  The Monitor Entities shall refrain from consulting with Monitor Clipper Partners, L.P. in connection with any matter affecting Recycled Paper Greetings, Inc. ("RPG") and shall likewise refrain from consulting with RPG on any matter, in both instances for a period of two (2) years after the delivery to Hallmark of the last of the sworn statements provided for in Paragraph 3.

5. The Monitor Entities shall refrain from any further use or dissemination of Hallmark Data.

6. The Monitor Entities shall refrain from any direct or indirect reference to Hallmark or to Monitor's work for Hallmark to any person or entity outside of Monitor.

7. Monitor shall issue a directive to (a) all members of the 2001-2002 Hallmark case team who remain employed by Monitor and (b) all senior managers of Monitor units marketing or selling Monitor's services advising them that they are not directly or indirectly to refer to Hallmark, Monitor's work for Hallmark, or a Buying Process analysis for a greeting card company, and not to use the phrase "Hallmark Buying Process."

SO ORDERED on this _21_ day of March, 2007

_____
David W. Russell, Arbitrator

## EXHIBIT A

The following entities are the "Monitor Entities":

Monitor Company Group Limited Partnership
Monitor Company France, SAS
Monitor Company GmbH
Monitor Company U.K. Ltd.
Monitor Company Europe
Monitor Group Hispana S.L.
Monitor Group Italy Srl
Monitor Group South Africa Pty. Ltd.
Monitor India Pvt Limited
Monitor Company Canada
Monitor do Brasil Limitada
Monitor Company Asia Pacific LLC
Monitor Group Korea Y.H.
Market2Customer, LLC